No. 86–5541. MAXWELL *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, I would vacate the judgment of the Florida Supreme Court insofar as it left undisturbed the death sentence imposed in this case. *Gregg* v. *Georgia,* 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). However, even if I believed that the death penalty could constitutionally be imposed under certain circumstances, I would nevertheless grant certiorari because petitioner's Sixth Amendment right to effective assistance of counsel required that he be given access to his trial counsel's work files for use in his state habeas corpus hearing in which he alleged that trial counsel's representation was constitutionally deficient.

I

Petitioner was convicted of murder and sentenced to death after a jury trial. The Supreme Court of Florida affirmed his conviction and sentence on direct appeal. 443 So. 2d 967 (1983). Fol-

lowing the issuance of a death warrant, petitioner sought habeas corpus relief in state court. After a hearing, the habeas petition was denied; the Supreme Court of Florida again affirmed. *Maxwell* v. *Wainwright*, 490 So. 2d 927 (1986).

The petition stated a claim for ineffective assistance of trial counsel, challenging counsel's failure to make certain motions and objections in the course of petitioner's defense. The habeas petition also alleged that trial counsel, engaged in his first attempt to defend a client on capital charges, inadequately investigated petitioner's background in preparation for the penalty phase of the trial. *Id.*, at 932–933.

Prior to the hearing, petitioner's trial counsel refused habeas counsel's informal request to produce work files pertaining to petitioner's defense. Time constraints did not permit habeas counsel to subpoena these materials before filing petitioner's motion for habeas corpus relief.[1] When the trial attorney testified at the hearing, he admitted denying access to the requested files and again refused production. He offered this justification for his refusal:

> "It is my reason and belief that . . . if I'm going to divulge or reveal or to allow people to inspect my files it should be done by court order from either side and the reason for that belief is that I think and believe wholeheartedly that if an attorney who's a trial attorney is preparing his case for trial that if its going to be subject to review a couple of years later it may put a chilling effect on an attorney making notes or work product or whatever have you.
>
> "In other words, that attorney may not be as free to express himself within his own confines of his file and, consequently, until a court orders me to do so and that's determined to be a lawful order, I have refused permission to turn it over to you." App. to Brief in Opposition 19–20.

Habeas counsel then moved to compel production of the trial attorney's entire file. The state court denied this motion "based upon [trial counsel's] rationale." *Id.*, at 20.

Without the file, petitioner was unable to demonstrate the alleged deficiency of trial counsel's representation, particularly with respect to his preparation for the penalty phase of petitioner's trial.

---

[1] Habeas counsel agreed to represent petitioner on October 30, 1984. The State of Florida had scheduled petitioner's execution for November 7, 1984.

This was due in large part to the attorney's apparent inability to recall important details of his representation. For example:

"Q. Did you obtain a release from Mr. Maxwell to try to take a look at any of [the State's] records?

"A. I don't have any recollection of that.

"Q. So you didn't even obtain a release from Mr. Maxwell?

"A. I didn't say that.

"Q. You said you don't have any recollection?

"A. Exactly.

"Q. Would it be in the file if you had?

"A. You're asking hypothetical questions and I don't know. I make notations on actions that I take in a great majority of times. Sometimes I don't make notations. So it's hard for me to answer that.

"Q. Something like a release of medical information?

"A. That should be in the file.

"Q. Did you try to obtain or review any of Mr. Maxwell's medical records?

"A. I have no recollection of that." *Id.*, at 27–28.

"Q. Other than the motions and memoranda you filed in the court file to the penalty phase, did you prepare any internal memorandum regarding the application of the aggravating and mitigating circumstances to this case?

"A. I had a lot of law or some law—the word 'a lot' is relative—into that case and whether I dictated memorandums or not, I don't remember. If I have them, I have them. If I don't, I don't.

"Q. But again those would be in your file; wouldn't it?

"A. Yes. . . ." *Id.*, at 36.

"Q. Do you recall finding out about any traumatic experiences Mr. Maxwell had?

"A. I may or may not have.

"Q. You may or may not?

"A. I'm sure I dealt in that area though.

"Q. Did you speak with any teachers Mr. Maxwell had?

"A. I have no recollection of doing that at all.

"Q. Ministers?

"A. Now, Joseph Maxwell [petitioner's father] was very religious and I don't remember whether I talked to a minister

or priest or a clergyman in that area or not. I don't specifically remember although it's possible.

"You have to remember it's three years I have not looked at that file and there's just things I don't remember because of the multitude of things that have happened since then.

"Q. I understand. If we had the file, would we be able to find out the answers to some of these questions?

"A. I'm afraid not. In some areas, yes, in some areas, no, because I don't make extensive notes on what I don't do. What I do is make notes on what I do do. And when you're coming from a negative position, I will not necessarily have notes to protect myself. More or less, I don't prepare a case to protect myself.

"So I may not have those kinds of notes. I would have notes as to what I did do." *Id.*, at 44–45.

On appeal to the Florida Supreme Court, petitioner argued that the denial of his requests for access to his trial attorney's files had impaired his due process right to a full and fair evidentiary hearing on his claim of ineffective assistance of counsel. The court rejected this argument with no substantive discussion, holding simply that "the hearing on the motion comported with due process principles." 490 So. 2d, at 932.

## II

An essential element of our society's protection of citizens accused of crime is the right to effective assistance of counsel. *Strickland* v. *Washington*, 466 U. S. 668 (1984); *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). "Counsel is provided to assist the defendant in presenting his defense, but in order to do so effectively the attorney must work closely with the defendant in formulating defense strategy. . . . Moreover, counsel is likely to have to make a number of crucial decisions throughout the proceedings on a range of subjects that may require consultation with the defendant. These decisions can best be made, and counsel's duties most effectively discharged, if the attorney and the defendant have a relationship characterized by trust and confidence." *Morris* v. *Slappy*, 461 U. S. 1, 21 (1983) (BRENNAN, J., concurring in result). Counsel's duty to maintain this trust and confidence extends beyond the trial itself. Though he may not continue to represent the defendant following conviction and the disposition of post-trial motions,

he must nevertheless cooperate with defendant's attempts to challenge the conviction or sentence, especially if he possesses unique information about a claim the defendant seeks to raise.   Use of this information may be the decisive factor in determining the defendant's failure or success on direct or collateral review.

A defendant's interest in the information in his trial counsel's exclusive possession is of even greater significance when the defendant alleges ineffective assistance by trial counsel.   Providing access to such information unquestionably advances the inquiry this Court identified in *Strickland* v. *Washington, supra,* at 689, as essential to determining whether counsel has rendered ineffective assistance: "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   There is no more accurate or reliable evidence of trial counsel's actual perspective and extent of preparation than the contents of his client's case file.   Access to these materials is critical where, as here, trial counsel's testimony rests on little more than vague recollections.   Indeed, with respect to petitioner's allegation that his trial attorney did not adequately prepare for the sentencing proceeding, petitioner's need for access to the work files is of paramount importance.   Denying access to what may be the most relevant evidence of the adequacy of legal representation is, in this respect, "fundamentally incompatible with the Eighth Amendment's heightened 'need for reliability in the determination that death is the appropriate punishment . . . .'"   *Caldwell* v. *Mississippi,* 472 U. S. 320, 340 (1985) (quoting *Woodson* v. *North Carolina,* 428 U. S. 280, 305 (1976)).

The courts below erred, in violation of petitioner's Sixth Amendment rights, in accepting trial counsel's reasons for withholding petitioner's files.[2]   The right to effective assistance fully encom-

---

[2] To the extent the Florida courts accepted trial counsel's suggested work-product doctrine, their rulings vastly misconstrue this doctrine's underlying purpose; the privilege to withhold an attorney's work product belongs to *the client,* and in this case petitioner seeks access to files retained by his *own attorney.*   Cf. *Spivey* v. *Zant,* 683 F. 2d 881, 885 (CA5 1982) (interpreting Federal Rule of Civil Procedure 26(b)(3)).   The attorney's asserted need to ensure that he is "free to express himself" within the confines of a written file is likewise without merit.   He seems to claim that if his recorded thoughts are not protected from discovery, he will be less likely to *inform himself and*

passes the client's right to obtain from trial counsel the work files generated during and pertinent to that client's defense. It further entitles the client to utilize materials contained in these files in any proceeding at which the adequacy of trial counsel's representation may be challenged.[3]

I would grant the petition for certiorari.

---

consider along with his client the various defensive strategies that might be available. In other words, he argues that he will be less likely to provide effective assistance of counsel, and yet this is precisely the issue petitioner wishes to investigate. I cannot accept that a lawyer should oppose the disclosure of recorded thoughts that do not evidence ineffective assistance; nor can I accept that petitioner's Sixth Amendment rights do not prevail over his lawyer's asserted privacy interests where that lawyer's recorded thoughts may reflect that ineffective assistance has in fact been rendered.

[3] Though States are not constitutionally required to establish avenues for seeking postconviction relief from an erroneous conviction, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Evitts* v. *Lucey*, 469 U. S. 387, 401 (1985).