Ronald K. SPIVEY, Petitioner-Appellant,

v.

Walter ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.

No. 80–7243.

United States Court of Appeals, Fifth Circuit.*
Unit B

Aug. 16, 1982.

Jeffrey D. Colman, Jenner & Block, Michael Shepard, Michael Palmer, Chicago, Ill., for petitioner-appellant.

William B. Hill, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before DYER, TJOFLAT and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

In our first encounter with this habeas corpus case, *Spivey v. Zant*, 661 F.2d 464 (5th Cir. 1981), we remanded the case to the district court for further proceedings on petitioner Ronald Keith Spivey's fifth, sixth, and fourteenth amendment claims; the procedural history of the case is detailed in that opinion, as are Spivey's constitutional claims. On remand, the district court was to conduct an evidentiary hearing to determine whether Spivey was represented by counsel on April 15, 1977, when the Georgia trial court ordered a psychiatric examination of his competence to stand trial and his mental condition at the time of the offense, as well as on April 18, 1977, when the first court-ordered examination occurred. The court was also to determine whether Spivey's counsel, if he had one, had prior notice of the April 18 examination. Having made the requisite findings, the

---

* Former Fifth Circuit Case, Section 9(1) of Pub-   lic Law 96–452—October 14, 1980.

court was to rule on Spivey's sixth amendment claim; if Spivey was required to submit to the examination without prior notice to counsel, either because he had no attorney or because his attorney had no notice, then *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), required sustaining Spivey's claim. *Spivey v. Zant*, 661 F.2d at 475–6. Finally, the district court was to reconsider Spivey's claim that his fifth amendment privilege against self-incrimination was violated when the court-appointed psychiatrist, without advising him that he had the right to remain silent and that any statement he made could be used against him at trial, and without notifying him of the purpose of the examination, interrogated Spivey while he was in custody and before he had manifested an intention to assert an insanity defense, and then testified for the State in rebuttal to Spivey's insanity defense. We retained jurisdiction of the case.

Having conducted an evidentiary hearing on remand, the district court entered its opinion and order finding the dispositive facts adversely to Spivey and rejecting his constitutional claims. Spivey now challenges the district court's order on three grounds: (1) That the court committed procedural errors, particularly the quashing of a subpoena *duces tecum* served on William J. Schloth, which require that we vacate the court's order and remand for further proceedings; (2) That the court-ordered psychiatric examinations violated Spivey's sixth and fourteenth amendment rights because, contrary to the findings of the district court, Spivey was not represented by counsel between April 15 and April 18, 1977, or, alternatively, because his attorney had no prior notice of the April 18 inquiry into Spivey's mental condition at the time of the offense; (3) That, contrary to the conclusions of the district court, Spivey's fifth and fourteenth amendment rights were violated by the prosecutor's use of information obtained through the compulsory psychiatric examinations. We conclude that the district court erred by quashing the subpoe-

na *duces tecum* served on William Schloth. Therefore, without reaching the merits of Spivey's constitutional claims, we vacate the court's order and remand for further proceedings.

The significance of the district court's quashing of the subpoena on Schloth is best understood in the context of the principal factual inquiries and the evidence adduced in the hearing below. Spivey was initially represented in the Georgia trial court by appointed counsel, Cain. On April 8, 1977, Cain represented Spivey in a hearing before the trial judge, Judge J. Alvan Davis, on Cain's motion for a psychiatric examination of Spivey. The record, including the language of the motion, suggests that the motion was directed to Spivey's competency to stand trial rather than to his mental condition at the time of the offense. Spivey, who opposed the motion and regarded it as a breach of Cain's promise not to file such a motion without first consulting him, announced that he would never again discuss the case with Cain and that he wanted another attorney. Judge Davis responded to Spivey's objections to the motion by emphasizing his duty to inquire into Spivey's "ability to stand trial at this time."

The record suggests, and we assume, that later on April 8, Judge Davis telephoned William J. Schloth and asked him to represent Spivey, and that Schloth agreed. One week later, on April 15, Judge Davis entered an order that Spivey be delivered to the Central State Hospital at Milledgeville for "a physical, neurological, and psychiatric examination and determination of [his] mental condition on [the date of the offense] and further to determine his mental capacity at this time to understand the nature of the charges against him and to assist his attorney in the defense of his case." That same day, Spivey was admitted to Milledgeville. The first examination pursuant to the April 15 order was conducted on April 18. Judge Davis issued his signed order appointing Schloth to represent Spivey on April 26.[1] Not until May

---

1. The April 26, 1977, order also appointed Alex Byars to assist Schloth in Spivey's defense. As

the State does not contend that Byars repre-

10, 1977, did Schloth meet or speak with Spivey.

In the hearing below, the principal factual inquiries were whether Schloth was representing Spivey between April 15 and April 18, 1977,[2] and whether he had notice before April 18 that an examination into Spivey's mental condition at the time of the offense was to be conducted.

At the evidentiary hearing, Mr. O. O. Spivey, the petitioner's father, testified that he learned from a court reporter that Schloth had been appointed to represent his son and that then, on approximately April 15, 1977, he visited Schloth at his office. Schloth confirmed that he had been appointed to represent Spivey. When Schloth asked whether O. O. Spivey would like to go with him to visit the petitioner in jail, Mr. Spivey replied that he had been told that his son had already been sent to Milledgeville. Schloth said he could not believe that Judge Davis would send Spivey to Milledgeville without first consulting him, but then confirmed by phone that Spivey had indeed been sent to Milledgeville. O. O. Spivey further testified that during the week of April 18, when he and Schloth next discussed visiting the petitioner, Schloth told him that the reason he had not been in touch earlier was that he had found out that he did not yet have Judge Davis' signed order authorizing him to represent the petitioner, and that he could not legally represent him without that order.

Spivey's original counsel, Cain, testified that some time after April 8, 1977, he called Schloth and offered to be of whatever help he could in bringing Schloth up to date on the case. Cain did not recall Schloth accepting his offer, and did not recall discussing with Schloth the question of Spivey's mental capacity. He testified affirmatively that he did not prepare the April 15 order

directing a psychiatric examination of Spivey, did not receive a copy of the order at any time during 1977, and did not ever discuss the order with Judge Davis or Schloth.

Judge Davis testified that he did not himself prepare the April 15 order, and that he did not recall who did. He further testified that he did not recall discussing the April 15 order with Schloth.

Schloth testified that he had two or more conversations with Cain about the Spivey case, the first being on April 8, 1977. He further testified that after talking with Judge Davis on April 8, he knew there had been a hearing on a motion for a psychiatric examination and that Judge Davis had ordered that Spivey be delivered to Milledgeville, but "The exact time he was to go was up in the air." Schloth emphatically stated that he did not prepare the April 15 order but he equivocated as to when he received a copy of that order. On direct examination, he initially stated that he did not recall when he first saw the order, but then testified that he did his first research on the case on April 15, and that before doing the research he had picked up "all of the files" from the District Attorney's office, including, to the best of his recollection, the April 15 order. During cross-examination, however, Schloth testified that he obtained the indictment and the witness list from the District Attorney's office on April 26. Because Spivey's counsel did not pursue the contradiction in Schloth's testimony,[3] the record is uncertain as to when, in Schloth's recollection, he received or first saw the April 15 order. Schloth did testify that at some point he decided not to intervene in the psychiatric examination at Milledgeville, and that when he made this decision he was aware that the examination would explore Spivey's sanity at the time of the

sented Spivey at any time relevant to this appeal, we do not further consider his role in the proceedings.

2. Like the parties and the district court, we assume that Cain's representation concluded on April 8.

3. It is entirely possible that the materials to which the district court denied Spivey access by erroneously quashing the subpoena *duces tecum* would have helped resolve the inconsistency in Schloth's testimony or would have alerted Spivey's counsel to the importance of pursuing the point on cross-examination.

offense. However, this testimony does not indicate when Schloth became aware that Spivey's sanity at the time of the offense was to be examined, because Schloth did not indicate when he made the decision not to intervene.

Setting aside the issue of when Schloth's representation of Spivey commenced for sixth amendment purposes, the evidence presented at the hearing below was far from dispositive of when Schloth learned that an examination into Spivey's sanity at the time of the offense was imminent. It appears unlikely that Cain informed Schloth that such an examination was to be conducted because, so far as the record shows, Cain, who never saw the April 15 order, would have anticipated an examination only into Spivey's competence to stand trial. Nor is there any evidence that Judge Davis advised Schloth of an imminent examination into Spivey's sanity at the time of the offense; indeed, it appears doubtful that Judge Davis, who did not prepare the April 15 order, himself anticipated such an examination on April 8, when he spoke with Schloth. Schloth's testimony, as we have seen, raises more questions than it answers. In this context, we consider the district court's treatment of the subpoena *duces tecum* Spivey served on Schloth.

Prior to the evidentiary hearing, Spivey served Schloth with a subpoena *duces tecum* calling for the production of: (1) All diaries, journals, time sheets, or other records indicating appointments, meetings, or other use of time for the period from April 1, 1977, until July 1, 1977; (2) All records indicating any bills for professional services rendered during the period from April 1, 1977, until July 1, 1977; (3) All notes, memoranda, correspondence, or other writings concerning or in any way relating to Ronald K. Spivey or *State of Georgia v. Ronald Keith Spivey*; (4) All notes, memoranda, correspondence, or other writings constituting, referring, or relating to any communications between William J. Schloth and Judge J. Alvan Davis or the Clerk of the Superior Court of Muscogee County, Columbus, Georgia. Schloth filed a motion to quash the subpoena, alleging that "compliance therewith is unreasonable and the material requested is the work product of the said William J. Schloth."

The district court addressed the motion to quash at the outset of the evidentiary hearing. Schloth was not asked to and did not say anything about the motion. Accordingly, he made no showing why the subpoena should be quashed beyond the terse statement in the motion itself. Finding that the file belonged to Schloth and not to Spivey, the court granted the motion to quash.[4]

---

4. Although the reasoning of the district court's oral ruling is not entirely clear, we understand the basis of the ruling to be that the requested materials were the personal possessions of Schloth and, possibly, that the materials were work product:

THE COURT: [H]e says he should not be required to produce his file which he maintained at the time he represented the Defendant. Why should he be required to produce his personal file? It is not the file of Mr. Spivey. It is the file of Mr. Schloth. Why should Mr. Schloth be required to produce his file?

MR. COLMAN [counsel for Spivey]: As I understand it, Your Honor, he is claiming work product protection in that file.

THE COURT: Yes.

MR. COLMAN: We submit to the Court that if there is anything in the file that represents his opinions or his mental impressions that Your Honor can look at the file in camera and excise those matters. We are not concerned here with his opinions in this case.

We are concerned—what we are concerned about is the one issue that you have indicated is present before this Court and that is when he was appointed and when he began to represent Mr. Spivey.

THE COURT: Well, he is here. He can testify about that. You have subpoenaed him. He is here. You can question him about it. But the question is, should he be required to produce his file maintained by him at the time he was representing Mr. Spivey. Since he is here, and can testify about it, it's not Mr. Spivey's file. It's Mr. Schloth's file. Mr. Schloth is entitled, as a lawyer, to protect his own personal file in any matter. He is not a party to this case. He is not a Defendant. He is not a Petitioner. To require a lawyer to produce his personal file, I think, goes quite beyond what is necessary. He is here. Mr. Schloth is here. You can question him.

MR. COLMAN: What we would request, Your Honor, is that you review the file *in camera*.

During the evidentiary hearing Schloth several times used his file to refresh his recollection. He also stated that he had glanced through his file prior to testifying. The district court's ruling on the State's objection to a question from Spivey's attorney prevented Schloth from stating in particular what he had looked at or whether there were any documents in the file that were created between April 8, 1977, and May 10, 1977.

In connection both with the subpoena and with Schloth's use of the file to refresh his recollection, Spivey's counsel requested that the court review the documents *in camera*. The district court twice refused "to review Mr. Schloth's file *in camera* or anywhere else." Counsel further requested that the court place the documents in a sealed envelope for transmittal to this court. The court declined. Counsel requested that the court instruct Schloth not to destroy any records until this court had an opportunity to rule on the matter. The court ignored this request. Finally, after the hearing, Spivey filed a motion to reconsider the order quashing the subpoena. The district court did not act on this motion.

■ The district court's quashing of the subpoena was error. None of the reasons advanced by Schloth in his motion to quash or by the district court in granting the motion supports the court's ruling.

■ The district court's view that Spivey was not entitled to access to the requested materials because they belonged to Schloth is untenable. Spivey, Schloth's former client, sought materials generated during and pertinent to the representation. Absent any assertion by Schloth of some particularized and superior interest in the materials, Spivey was entitled to all portions of Schloth's file relevant to the proceedings in the district court.[5]

> THE COURT: I decline to do that. I decline to do that.
> MR. COLMAN: Would Your Honor ask Mr. Schloth to produce to us those matters that do not include his mental impressions?
> THE COURT: Mr. Schloth is here. He can produce whatever he wants to produce for

Schloth contended that the subpoena *duces tecum* was unreasonable. Inartfully worded, the subpoena does appear to request some materials which do not pertain to Spivey; insofar as it does, the subpoena is overly broad. However, neither Schloth nor the district court sought to limit the materials Schloth was required to produce, but instead sought to relieve Schloth of the necessity to produce any materials whatever.

■ Schloth's contention that the requested materials were protected work product is without merit. The work product doctrine pertains to materials prepared by an attorney in preparation for litigation when the materials are sought by an adversary of the attorney's client. Fed.R.Civ.P. 26(b)(3) speaks of "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for *another* party or by or for that *other* party's representative . . . ." (emphasis added). Thus, the work product doctrine does not apply to the situation in which a client seeks access to documents or other tangible things created or amassed by his attorney during the course of the representation.

Moreover, the only matters protected from disclosure by the work product doctrine are "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3). At the hearing, Spivey's counsel offered to take Schloth's papers only after his mental impressions or legal theories had been excised. See note 4, *supra.* In this connection, counsel twice requested the court to review the file *in camera*. The court denied those requests. As a result, nothing in the record indicates that any of the subpoenaed documents contain mental impressions or opinions.

> you. I will not require him to produce anything that he does not want to produce. That is my ruling on the matter.

5. We note in addition that Spivey was entitled to inspect and use during cross-examination of Schloth whatever portions of his file Schloth used to refresh his memory. Fed.R.Evid. 612.

The district court's error tainted the evidentiary hearing by denying Spivey, and the court, access to materials which might have helped resolve the factual issues which precipitated the hearing and as to which other, dispositive, evidence was not available. We therefore vacate the order of the district court and remand for further proceedings. Spivey must be permitted to inspect the materials in Schloth's possession which may bear on the factual issues before the court. The court must then reopen the evidentiary hearing and allow Spivey a full and fair opportunity to cross-examine Schloth based on those materials, and to present whatever additional evidence the materials divulge. We retain jurisdiction of the case and instruct the district court to certify its findings, amended as the forthcoming proceedings require, and the record of its proceedings on remand to us within thirty days of the issuance of this opinion.[6]

VACATED and REMANDED, with instructions.

---

6. Spivey suggests in his brief that on remand, the case should be reassigned to a different judge. We are confident that the district judge who has heard the case to this stage is capable of according Spivey the fair hearing to which he is entitled, and we therefore decline the suggestion.