**In re ANR ADVANCE TRANSPORTA-
TION COMPANY, INC., Debtor.**

No. 99–22155–JES.

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 19, 2002.

Leonard G. Leverson, Milwaukee, WI, for Debtor.

Andrew N. Herbach, Milwaukee, Milwaukee, WI, for Bruce Lanser.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

### *PRELIMINARY*

Bruce A. Lanser, trustee for the above-named debtor ("trustee") and Central States, Southeast and Southwest Areas Pension Fund ("Central States") filed a joint motion seeking an order approving the trustee's waiver of the debtor's attorney-client privilege and work product privilege.[1] The joint motion has been met with objections from the following attorneys, all of whom previously represented either the debtor or Advance Transportation Company, a pre-merger predecessor corporation of the debtor:

1. **David F. Loeffler**, on behalf of himself and on behalf of **Attorney Thomas P. Krukowski; Attorney Elizabeth A. McDuffie;** the law firm of **Krukowski & Costello, S.C.;** and **Robert G. Turcott**, former in-house general counsel of ANR Advance Transportation ("Loeffler Group").

2. **Kravit, Gass, Hovel & Leitner, S.C.** ("Kravit Gass").

3. **Whyte Hirschboeck Dudek S.C.** ("Whyte Hirschboeck").

The Loeffler Group and Kravit Gass previously provided advice to the debtor and object solely to the waiver of work product immunity. Whyte Hirschboeck previously provided advice to Advance Transportation Company and objects to waiver of both attorney-client privilege and work product immunity.

The parties have stipulated that the issues before the court are as follows:

1. Whether the trustee has the power to waive the attorney-client privilege and the work product immunity to assist a creditor in determining whether a third party may be jointly and severally liable for a claim that the creditor has against the debtor, and

2. Whether an attorney may assert work product immunity to prevent disclosure even if the client waives work product immunity.

### *FACTUAL BACKGROUND*

The debtor was formed in 1996 as a result of a merger of ANR Freight Systems, Inc. and Advance Transportation Company. Before this merger, ANR Freight Systems was 100% owned by Coastal Corporation or one or more of its subsidiaries. After this merger, Coastal Corporation owned 50% of the newly-formed debtor.

■ Under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multi–Employer Pension Plan Amendments Act of 1980, liabili-

---

1. The terms "work product doctrine," "work product protection," and "work product immunity" are other terms used in describing work product privilege. Whenever any of these terms are used throughout this decision, they are interchangeable with each other.

ty for a withdrawal payment can be allocated to a party who is a member of a "control group" in which the employer (meaning, in this case, the debtor) is also a member. To be subject to such withdrawal liability, it must be established that such party holds at least an 80% stock ownership of the debtor. Before the merger, Coastal Corporation would have qualified as a member of the "control group." After the merger, Coastal Corporation owned less than an 80% stock ownership interest of the newly-formed entity and would not be a part of the "control group" unless, pursuant to 29 U.S.C. § 1392(c), the purpose of this merger was to avoid withdrawal liability.

On February 2, 1999, an involuntary petition under chapter 11 was filed against the debtor by certain creditors in the United States Bankruptcy Court in Delaware. On March 3, 1999, the Delaware bankruptcy court entered an order for relief under chapter 7 and further ordered that the case be transferred to the United States Bankruptcy Court for the Eastern District of Wisconsin, where it is now pending.

Central States filed an unsecured proof of claim in this bankruptcy case in the sum of $20,724,279.15, based upon withdrawal liability. Central States is currently investigating whether Coastal Corporation may also qualify as a member of the "control group" for purposes of withdrawal liability. If shown that the 1996 merger was effected for the purpose of Coastal Corporation evading or avoiding withdrawal liability pursuant to 29 U.S.C. § 1392(c), this would in turn substantially reduce Central States' claim against this bankruptcy estate.

### WAIVER OF ATTORNEY–CLIENT PRIVILEGE

■ Whyte Hirschboeck has challenged the trustee's ability to waive the attorney-client privilege, notwithstanding *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Weintraub*, the U.S. Supreme Court held that a bankruptcy trustee for a corporation can waive the corporation's attorney-client privilege with respect to pre-petition communications. *Weintraub*, 471 U.S. at 358, 105 S.Ct. 1986. Whyte Hirschboeck asserts that *Weintraub* does not apply because the court stated that the trustee "has the duty to maximize the value of the estate." *Weintraub*, 471 U.S. at 350, 105 S.Ct. 1986. Whyte Hirschboeck deduces from this statement that reducing proofs of claim is not maximizing the value of the estate.

The court rejects this analysis by Whyte Hirschboeck. Although the U.S. Supreme Court did specifically use the words "maximizing the value of the estate," that term was used to support its holding. It was not intended to be a necessary condition to a trustee's ability to assert the attorney-client privilege. Furthermore, a trustee's efforts to reduce proofs of claim and thereby increase the percentage dividend to the creditors is a form of "maximizing the value of the estate." In *In re Martin*, the Third Circuit discussed the meaning of the term "maximizing the value of the estate" as used in *Weintraub* and stated:

> In sum, it is a trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors.

*In re Martin*, 91 F.3d 389, 394 (3rd Cir. 1996). *See also In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 635 (1st Cir.2000); and *Matter of Accomazzo*, 226 B.R. 426, 429 (D.Ariz.1998).

The fact that Central States, rather than the trustee, is taking the initiative in the investigation involving Coastal Corporation does not alter this result. What matters is

that the trustee is actively and voluntarily supporting Central States in this endeavor.

The court is persuaded that the holding in *Weintraub* applies to the facts and circumstances of this case and that the trustee is vested with control over the exercise of the attorney-client privilege.

### WORK PRODUCT IMMUNITY

Whether an attorney may assert work product immunity, if the client waives work product immunity, presents a more challenging issue.

All of the attorneys who previously provided legal representation to the debtor or to Advance Transportation Company contend that, if they are required to turn over this information to the trustee, such information would then be utilized by Central States. These attorneys reason that such turnover would benefit Central States, an adversarial third party, which flies in the face of the policy of work product protection—namely, to enable an attorney to protect his or her mental processes from invasion by an adversary. The trustee and Central States, however, respond that the proposed turnover of the work product is not an invasion by an adversary. They argue that it is being sought for the purpose of benefitting the bankruptcy estate.

▉▉▉ The court recognizes that an attorney, as well as the client, has the right to assert the work product immunity. As a general proposition, however, an attorney may not withhold work product from his or her own client. *See* Epstein, Edna S. *The Attorney–Client Privilege and the Work Product Doctrine*, 640 (4th ed. 2001) ("The client is entitled to the full benefit of the engagement, including the work product produced"). In *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, Judge Reynolds declined to order a turnover of work product to the client declaring that he was not presented with "any

authority for the proposition that a lawyer must turn over even to his own client all of his work product in the client's case." 86 F.R.D. 160, 168 (E.D.Wis.1980). Since *First Wisconsin* was decided, however, ample case law has developed holding that work product must be turned over to the client. *See Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir.1982); *Resolution Trust Corp. v. H—PC*, 128 F.R.D. 647, 649 (N.D.Tex. 1989); *Clark v. Milam*, 847 F.Supp. 424, 427 (S.D.W.Va.1994); and *Polin v. Wisehart & Koch*, 2002 WL 1033807 (S.D.N.Y. 2002). In *Polin*, the court declared that:

> Where the interest of the client and the attorney clash—as here—it is the client's interest that will prevail.

*Polin v. Wisehart & Koch*, 2002 WL 1033807.

The attorneys opposing the joint motion have cited *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir.1980), as authority in support of their position that an attorney may assert work product immunity even when waived by the client. That is an overly broad interpretation of that case. In *Special September 1978 Grand Jury*, the client, because of his ongoing fraud, was precluded in a criminal proceeding from asserting the work product privilege. He did not voluntarily waive it. That is a crucial distinction from the facts in the case at bar where the trustee is affirmatively seeking authority from this court to enable him to waive that privilege.

▉▉ The purpose of the work product doctrine is to protect the client—not the attorney. *Spivey v. Zant*, 683 F.2d at 885. In *Spivey*, the Fifth Circuit declared that "work product doctrine does not apply to a situation in which a client seeks access to documents or other tangible things created or amassed by his attorney during the course of the representation." *Spivey v. Zant*, 683 F.2d at 885. *See also Research*

*Institute for Medicine & Chemistry, Inc. v. Wisconsin Alumni Research Foundation,* 114 F.R.D. 672, 680 (W.D.Wis.1987) ("work product rule is designed to protect the lawyer's work from his litigation adversary").

The attorneys opposing the joint motion assert that exposing their work product would have a chilling effect on its creation. That argument was also raised, and then rejected, by the U.S. Supreme Court in *Weintraub* in connection with the trustee's control over the attorney-client privilege. The U.S. Supreme Court declared:

> But the chilling effect is no greater here than in the case of a solvent corporation, where individual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel.

*Weintraub,* 471 U.S. at 357, 105 S.Ct. 1986.

■ Upon a consideration of the conflicting policies—one favoring the attorneys seeking to withhold such work product and the other favoring the former client seeking to have the information turned over—this court concludes that the policy in favor of such turnover of information prevails. In *Resolution Trust Corp.,* Judge Sanders stated:

> An attorney is hired to represent the interests of his client and every service provided by the attorney, including the creation of legal memoranda and attorneys' notes and the copying of documents, is paid for by the client. To allow the attorney to decide which materials may or may not be revealed to the client from its files would deny the client the full benefit of the services for which he paid, often dearly. Even more important, giving such a power to an attorney would fundamentally undermine the fiduciary nature of the relationship be-

tween an attorney and client. Such an alteration is unwarranted and untenable. It is a sound public policy which exacts utmost fidelity of attorneys and that policy should not be weakened by the whittling down process or the adding of numerous exceptions to the rules calling for its application.

*Resolution Trust Corp.,* 128 F.R.D. at 649.

In *Roberts v. Heim,* the district court adopted in their entirety the recommendations of Special Master Gerald A. Cohn, who stated, in his analysis of the work product privilege, the following:

> It is difficult, if not impossible, to see how providing a client with his attorney's work product, which has been created by his attorney and for his benefit and not that of the attorney, would in any way run afoul of the public policy in favor of work-product privilege . . . .

*Roberts v. Heim,* 123 F.R.D. 614, 634 (N.D.Cal.1988).

### CONCLUSION

The trustee has the power to waive the debtor's attorney-client privilege and the work product immunity in order to assist a creditor (meaning, in this case, Central States) in determining whether a third party may be jointly and severally liable for a claim that the creditor has against the debtor.

■ In addition, an attorney may not assert work product immunity and thereby prevent its disclosure, where the client has waived such work product immunity and is seeking access to the work product for the client's own benefit.

The joint motion of the trustee and Central States for an order approving the trustee's waiver of the debtor's attorney-

client privilege and work product privilege is **GRANTED.**