*1005
 
 OPINION
 

 By the Court, Agosti, J.:
 

 In this appeal, we consider whether a post-conviction habeas petitioner should have been permitted to inspect and introduce his former attorney’s notes from the case file into evidence after former counsel used the notes to refresh his recollection while testifying at the post-conviction evidentiary hearing. We also consider the proper burden of proof that a petitioner carries on disputed factual questions in the context of a post-conviction hearing. Finally, we consider whether granting a default judgment pursuant to the Nevada Rules of Civil Procedure is appropriate when the State is tardy in responding to a petition for post-conviction relief.
 

 We conclude that the district court improperly denied petitioner access to his former attorneys’ notes. We further conclude that petitioner’s burden of proof on disputed factual issues underlying a claim of ineffective assistance of counsel is by a preponderance of the evidence and that it was error to require petitioner to prove by clear and convincing evidence that he had instructed his attorneys to appeal his conviction. Finally, we conclude that the district court properly denied petitioner’s motion for default judgment.
 

 FACTS
 

 Appellant Clyde Means pleaded guilty to and was convicted of attempted sexual assault upon his nineteen-year-old son. The victim alleged that Means had sexually assaulted him on at least three separate occasions while they lived in Nevada. Means had first pleaded not guilty to one count of open or gross lewdness and three counts of sexual assault.
 

 At trial, after the jury was empaneled but before any evidence was presented, the district court conducted a hearing outside the jury’s presence to determine whether to admit evidence of Means’s prior bad acts.
 
 [1]
 
 After the district court ruled that the prior bad acts were admissible, the State and defendant, through his attorneys, negotiated a plea bargain. In return for Means’s plea of guilty to attempted sexual assault, the State agreed to dismiss all other charges.
 

 Pursuant to the agreement, Means entered a plea of guilty. During the plea canvass, Means stated that his guilty plea was not the result of any threats or persuasion, but was his own idea. The district court informed Means that he would face two to twenty
 
 *1006
 
 years in prison, up to a $10,000 fine and be required to pay restitution; Means was also told that probation was not available to him. Means indicated that he understood. The district court did not inform Means that he would be subject to lifetime supervision by the State’s Division of Parole and Probation upon his release from prison.
 

 At Means’s sentencing hearing, the district court noted that the statutory sentence was between two to twenty years incarceration in prison and lifetime supervision upon release. The State Division of Parole and Probation recommended that Means be sentenced to a minimum of 57 months and a maximum of 144 months incarceration with lifetime supervision. The victim requested that Means receive the maximum penalty.
 
 [2]
 
 The district court sentenced Means to the maximum penalty and informed him that he would be subject to lifetime supervision upon his release from prison.
 

 Means did not appeal from his sentence. He subsequently filed a proper person petition in the district court for post-conviction relief. Means alleged that his guilty plea was not entered intelligently and voluntarily because he was on medication for manic depression and that his defense counsel’s assistance was ineffective for failing to obtain a competency evaluation and for failing to directly appeal Means’s conviction upon his request; Means also alleged that his sentence violated his constitutional right against cruel and unusual punishment and that the provision in the sentence requiring lifetime supervision constituted double jeopardy and also violated the Equal Protection Clause.
 

 The district court appointed post-conviction counsel to represent Means. After a hearing, the court denied the habeas petition in part and granted Means’s request for an evidentiary hearing regarding the issue of his defense counsel’s failure to pursue an appeal.
 

 Before the evidentiary hearing, Means requested the notes and files kept by his former attorneys during the course of their representation of Means in the criminal case. Apparently, his former counsel turned over the file but removed their notes.
 
 [3]
 
 During the evidentiary hearing, one of Means’s former attorneys, Christian Bryner, referred to those notes while being questioned. Means moved to inspect those notes and to have them introduced as evidence. After the parties briefed the issue of whether an attorney’s notes should be released to a former client and after an in camera inspection of the notes, the district court denied Means’s motion. Subsequently, the district court denied Means’s petition for post-conviction relief.
 

 
 *1007
 
 Means now appeals the denial of his petition. He argues that the district court erred by ruling that he was not entitled to his trial attorneys’ notes, applying the wrong burden of proof, refusing to conduct a hearing on the validity of his plea, concluding that his former defense counsel provided adequate assistance and denying his motion for a default judgment.
 

 DISCUSSION
 

 Access to counsel’s notes
 

 In connection with his factual claim that he had instructed his former attorneys to appeal his conviction and sentencing, Means requested the attorneys’ file. Means claimed that his former attorneys’ failure to appeal amounted to ineffective assistance of counsel, entitling him to post-conviction relief. Counsel disputed the factual claim that Means had asked them to file an appeal. His former attorneys, Lamond Mills and Bryner, acquiesced in Means’s request for production of their trial file but, as previously mentioned, they withheld their written notes. Bryner referred to those notes while testifying at Means’s post-conviction hearing. Means requested that the district court allow him to inspect the notes and thereafter admit those notes into evidence, but the district court refused.
 

 Means claims that this was error since Bryner used the notes to refresh his recollection at the hearing. Under NRS 50.125, Means argues, he was entitled to inspect the notes and introduce them into evidence. Means further argues that NRS 7.055 requires the discharged attorney to deliver everything prepared for the client, including notes. Finally, Means contends that the attorneys could not invoke the work product privilege found in NRCP 26(b)(3) to justify withholding their notes because the privilege is meant to protect a party from disclosing to an opposing party mental impressions, conclusions, opinions and legal theories. Means asserts that Bryner and Mills represented him and so he is not and cannot be an opposing party within the meaning of the rule; Means also asserts that the rule does not apply when a former client seeks his former counsel’s notes in a post-conviction proceeding where the former counsel is a witness.
 

 We review the district court’s resolution of discovery disputes for an abuse of discretion.
 
 [4]
 
 We also review a district court’s decision to admit or exclude evidence at hearings and trials for an abuse of
 
 *1008
 
 discretion. It is within the district court’s sound discretion to admit or exclude evidence,
 
 [5]
 
 and “this court will not overturn [the district court’s] decision absent manifest error.”
 
 [6]
 

 NRS 50.125(l)(b) allows an adverse party to inspect any writing used to refresh a witness’s recollection. It further allows the adverse party to cross-examine the witness about the writing and to introduce into evidence relevant portions affecting the witness’s credibility.
 
 [7]
 
 NRS 50.125(2) allows the district court to inspect and excise irrelevant portions of the writing used to refresh memory before providing it to the adverse party.
 

 Bryner, at the State’s request, used his file and notes to refresh his recollection as to the number of times he had communicated with Means. The district court also asked Bryner if his notes indicated that Means had requested Bryner to file an appeal. Bryner testified that nothing in his notes indicated that Means wanted to appeal his conviction. The district court refused Means’s request to inspect the notes but reserved a final ruling until the parties had briefed the issue. The court later heard oral argument on the issue and subsequently denied Means’s motion. The district court erred. Because Bryner used the notes to refresh his recollection and testified directly from the document, Means was entitled to inspect the notes.
 
 [8]
 

 The State argues that the work product doctrine protects not only the client but also the attorney and therefore shields an attorney from having to disclose the contents of a client’s file to the client. The State contends that trial preparation would be impaired if defense counsel knew his preparation notes would potentially be open to review at subsequent proceedings; there being no way, other than through self-serving and selective trial preparation for an attorney to protect him or herself from misuse of damaging information in the client’s file, the attorney’s preparation of a case would necessarily be impacted. The State argues that an attorney’s notes should only be discoverable if the former client first demonstrates a substantial need for the notes and secondly that he cannot obtain the same information elsewhere without undue hardship. The State describes this as the federal approach and urges this court to adopt it to protect an attorney’s work product in a criminal case from disclosure to the attorney’s client.
 
 [9]
 

 
 *1009
 
 Most federal authority addresses attorney files and the work product doctrine in the context of opposing a demand for disclosure made by counsel representing a party adverse to the client, rather than the former client.
 
 [10]
 
 In deciding whether to provide opposing counsel with access to information that is otherwise protected from disclosure as work product, one factor the federal courts consider is whether the information is factual or constitutes the attorney’s opinions, mental impressions, trial tactics and conclusions. While the court may release factual work product to opposing counsel upon a showing of substantial need and inability to acquire equivalent information without undue hardship under FRCP 26(b)(3), discovery of the attorney’s mental impressions generally requires a higher showing of need or is undiscoverable altogether.
 
 [11]
 

 In
 
 Spivey v. Zant,
 
 a post-conviction habeas corpus proceeding similar to the case at hand, the petitioner alleged that either he was without counsel or his counsel had no notice of the trial court’s order requiring him to submit to psychological examination.
 
 [12]
 
 Prior to trial, the petitioner had fired his attorney. The trial court subsequently appointed another attorney. However, in the interim, the district court ordered the petitioner to submit to a psychological examination to determine his competency to stand trial and also to ascertain his mental condition at the time of the offense. In conducting discovery prior to the post-conviction habeas hearing, the petitioner sought, by subpoena duces tecum, his former counsel’s notes to aid him in establishing as a fact, the date when counsel
 
 *1010
 
 was notified of the court’s order compelling the psychological examination. The district court granted the former counsel’s motion to quash the subpoena. During the evidentiary hearing, petitioner’s former counsel refreshed his recollection with his file. The petitioner’s current counsel requested that the district court review the file in camera and permit petitioner access to all discoverable contents, but the district court refused. On appeal, the Fifth Circuit held that the district court erred by quashing the subpoena.
 
 [13]
 
 The court concluded that the work product doctrine did not protect the attorney’s file from disclosure to the attorney’s client.
 
 [14]
 
 The court also noted that the work product doctrine only prevents disclosure of the attorney’s mental impressions, conclusions, opinions and legal theories.
 
 [15]
 

 Like the petitioner in
 
 Spivey,
 
 Means sought his own former attorneys’ notes. The work product doctrine is most commonly and appropriately invoked when opposing counsel attempts to access a criminal defendant’s file. Such is not the case at hand. Means’s former attorneys’ notes were relevant to support or negate Means’s assertion that he had asked counsel to appeal his conviction. Such an inquiry did not seek counsel’s mental impressions. At the hearing, former counsel, acting as a witness, refreshed his memory with the notes. Under that circumstance, Means was entitled under the statute to demand to see the notes. We conclude that the work product doctrine is not an exception to the inspection rights conferred in NRS 50.125 and does not shield an attorney from having to disclose his notes to his former client when the attorney, in giving testimony, has refreshed his memory with the notes. In refusing Means access to his former counsel’s notes, the district court erred.
 

 
 *1011
 

 Burden of proof
 

 In his petition for post-conviction relief, Means claimed he was deprived of a direct appeal without his consent due to his counsel’s ineffectiveness. After conducting an evidentiary hearing solely on this issue, the district court denied the claim, finding that Means had not established the facts by clear and convincing evidence. On appeal, Means argues that the district court failed to apply the correct burden of proof. In briefing this matter on appeal, the State has elected not to address this argument.
 

 [Headnotes 6-10]
 

 In a post-conviction habeas petition, we evaluate claims of ineffective assistance of counsel
 
 [16]
 
 under the test established in
 
 Strickland
 
 v. Washington.
 
 [17]
 
 In that 1984 decision, the United States Supreme Court created a fair, workable and, as it turns out, durable standard that replaced Nevada’s traditional “farce and sham” test.
 
 [18]
 

 Strickland
 
 dictates that our evaluation begins with the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.”
 
 [19]
 
 The Court further explained that the “defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ”
 
 [20]
 
 Within the context of this strong presumption, the petitioner must demonstrate that his counsel’s performance was deficient, falling below an objective standard of reasonableness, and that counsel’s deficient performance prejudiced the defense.
 
 [21]
 
 To establish prejudice based on counsel’s deficient performance, a petitioner must show that, but for counsel’s errors, there is a reasonable probability that the outcome would have been different.
 
 [22]
 
 A court may evaluate the questions of deficient performance and prejudice in either order and need not consider both issues if the defendant fails to make a sufficient showing on one.
 
 [23]
 
 Yet the claim that ineffective assistance of counsel prejudiced the petitioner is distinct from its factual nucleus. In
 
 Strickland,
 
 the Court did not set forth the specific burden that the petitioner carries in proving the factual allegations that form the
 
 *1012
 
 basis of an ineffective-assistance-of-counsel claim.
 
 [24]
 
 Neither has this court clarified that burden of proof.
 

 Some Nevada authority signals that the petitioner must prove the factual allegations underlying an ineffective-assistance-of-counsel claim by clear and convincing evidence. In
 
 Davis
 
 v.
 
 State,
 
 we indicated, consistent with previous decisions, that “ ‘strong and convincing proof ’ ’ was necessary to overcome the presumption that defense counsel fully discharged his duties.
 
 [25]
 
 However, many federal courts have applied the preponderance standard to the underlying facts alleged in the petition.
 
 [26]
 
 In
 
 Alcala v. Woodford,
 
 the Ninth Circuit Court of Appeals echoed other federal cases in stating that a habeas petitioner must prove the factual allegations underlying claims of ineffective assistance by a preponderance of the evidence.
 
 [27]
 
 Similarly, the Fifth Circuit Court of Appeals noted in
 
 James
 
 v.
 
 Cain,
 
 that “[a] petitioner who seeks to overturn his conviction on grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence.’ ’
 
 [28]
 

 Choosing consistency with federal authority, we now hold that a habeas corpus petitioner must prove the disputed factual allegations underlying his ineffective-assistance claim by a preponderance of the evidence.
 
 [29]
 
 To the extent that our decision today conflicts with
 
 *1013
 
 the “strong and convincing” language of
 
 Davis
 
 and its predecessors, we expressly overrule those cases. Therefore, when a petitioner alleges ineffective assistance of counsel, he must establish the factual allegations which form the basis for his claim of ineffective assistance by a preponderance of the evidence. Next, as stated in
 
 Strickland,
 
 the petitioner must establish that those facts show counsel’s performance fell below a standard of objective reasonableness, and finally the petitioner must establish prejudice by showing a reasonable probability that, but for counsel’s deficient performance, the outcome would have been different.
 

 In this case, the evidence before the district court at the post-conviction evidentiary hearing primarily consisted of Means’s testimony and that of his former attorneys. Mills, who had acted as lead counsel, testified that he did not recall discussing appeal rights with Means’s family because there were no appeal issues to discuss. Bryner testified that, a couple of weeks after Means was sentenced, Means called him and expressed concern that the sentence that had been imposed against him was greater than the maximum sentence allowed
 
 [30]
 
 and also that he did not want to have lifetime supervision imposed upon him. Bryner testified that he did not recall that Means had asked for an appeal. Bryner further testified that he told Means that the incorrect sentence could be resolved by a motion or by a telephone call, as it was a clerical error. However, Bryner took no action on Means’s behalf. Bryner further testified that he researched the lifetime supervision portion of the sentence and informed Means that, after he had finished serving his prison sentence and some time had lapsed after his release from prison, Means could seek to have the lifetime supervision provision removed. Bryner testified that Means seemed satisfied with that answer.
 

 In contrast, Means testified that his sentence differed from the punishment for which he had bargained because he was never informed about the lifetime supervision component until it was imposed. Means stated that, based on the imposition of the lifetime supervision term, he called Mills’s office, spoke to Bryner and asked Bryner to file an appeal. Means testified that Bryner questioned him about who would pay for an appeal and indicated that he, Bryner, would need to speak to Mills. Means testified that ap
 
 *1014
 
 proximately four weeks after that telephone conversation, he called Mills’s office again, and Bryner informed him that Mills’s office had refused to handle the matter.
 

 Where there is credible, conflicting evidence, the burden of proof may make a difference in the district court’s factual findings. Here, the evidence about whether Means requested his attorneys to file a direct appeal involved directly conflicting testimony. Because the district court required Means to prove by clear and convincing evidence that he had asked his attorneys to pursue an appeal, Means’s rights were prejudiced. The record before us does not disclose whether the district court’s factual determination that Means had not asked his attorneys to appeal would have been different had Means only been required to establish this fact by a preponderance of the evidence.
 

 By holding Means to an impermissibly higher burden of proof, we cannot conclude that the district court’s error was harmless beyond a reasonable doubt.
 
 [31]
 
 If the evidence is persuasive when the burden of a preponderance of the evidence is applied, then Means would be entitled to post-conviction relief because, as we discuss later in this opinion, prejudice is presumed. It is entirely possible that evidence may be persuasive under a preponderance standard although not under more stringent standards such as proof by clear and convincing evidence or the criminal standard requiring proof beyond a reasonable doubt.
 

 Because Means is entitled to present his evidence and have disputed factual matters judged by a preponderance of the evidence, and because Means was, at the post-conviction hearing, improperly refused the opportunity to inspect his counsel’s notes, we are compelled to reverse and remand for a new evidentiary hearing so that the district court may, first, permit Means access to the notes Bryner relied upon to refresh his memory and, second, afford Means the opportunity to prove by a preponderance of the evidence that his counsel had a professional obligation to file an appeal.
 

 If the trier of fact believes Bryner’s testimony that Means contacted him, well within the time to file an appeal, and complained about his allegedly illegal sentence and the imposition of lifetime supervision, Means may be entitled to relief. While Means must prove by a preponderance of the evidence the factual underpinnings concerning what issues he raised with his attorneys, if he shows that he asked for an appeal, the legal conclusion to be drawn is settled. In
 
 Davis v. State,
 
 we recognized that, if a defendant who was convicted pursuant to a guilty plea asks for an appeal, and counsel fails to appeal, prejudice to the defendant is presumed.
 
 [32]
 
 That
 
 *1015
 
 is, if counsel fails to file an appeal despite the defendant’s request, counsel rendered ineffective assistance.
 
 [33]
 
 Moreover, we also held that “ ‘[a]n attorney has a duty to perfect an appeal when a convicted defendant expresses a desire to appeal or indicates dissatisfaction with a conviction.’ ”
 
 [34]
 
 Under the circumstances of this case, even assuming that Means did not specifically request an appeal, and even if Means did not have the financial resources to retain Bryner and Mills to file an appeal, it may well have been incumbent upon counsel to inform Means of his right to appeal and to file an appeal on his behalf.
 
 [35]
 

 Remaining claims pertaining to guilty plea
 

 Means asserts that the district court erred by denying him an ev-identiary hearing on other claims raised in his habeas petition because he set forth specific allegations that were not belied by the record.
 
 [36]
 
 Means specifically alleges that, because he was taking medication for his manic depression when he entered his guilty plea, he was not competent to plead guilty, and the district court should have held an evidentiary hearing to determine whether he entered his plea knowingly and intelligently. Means further contends that the district court should have held a hearing on whether his plea was voluntary because, at the time he pleaded guilty, the district court did not mention that as a result of the conviction he would be subjected to lifetime supervision upon his release from prison. The State responds only to the first argument.
 

 When the district court granted an evidentiary hearing on Means’s claim that his counsel was ineffective in failing to perfect an appeal after Means asked for an appeal, the court also denied all other claims set forth by Means. In its order, the district court found the following claims by Means to be without merit: claims that his plea was involuntary because the court’s sentencing canvass was inadequate as a matter of law and that the court violated the Fourteenth Amendment
 
 [37]
 
 when it failed to request a competency hearing. The court stated that the record clearly demonstrated that during the court’s canvass Means received a complete explanation of the nature of the charge, possible penalties and the right to a trial. The court stated that Means had competent coun
 
 *1016
 
 sel present, and Means had indicated that he understood his rights, that he was pleading guilty because he was guilty, and that “no promises had been made to him.’ ’
 

 We conclude that the district court correctly denied Means an evidentiary hearing on his contention of mental incompetence. However, the contention that Means knew nothing about mandatory lifetime supervision merited an evidentiary hearing; the district court erred in denying him a hearing on this issue.
 

 A post-conviction habeas petitioner is entitled to an evidentiary hearing “only if he supports his claims with specific factual allegations that if true would entitle him to relief.’ ’
 
 [38]
 
 However, if the record belies the petitioner’s factual allegations, the petitioner is not entitled to an evidentiary hearing.
 
 [39]
 

 Means’s allegation that the psychotropic medications he was taking for manic depression rendered him incompetent is belied by the record. At Means’s initial arraignment, the district court asked him if he had ever been treated for a mental disorder. To his counsel’s surprise, Means answered in the affirmative. After allowing Means and his counsel an opportunity to confer, the district court asked them if they were “okay.” Means’s counsel responded in the affirmative. Although the district court’s initial canvass, by itself, was tenuous in resolving the question of Means’s mental competency, the results of Means’s subsequent examinations by Dr. Robert Brewer, a psychiatrist licensed in Nevada, and Dr. Gary Solomon, a forensic research specialist, indicate that Means was competent. Additionally, at the request of the Division of Parole and Probation’s Pre-sentence Investigation Unit, John S. Pacult, a licensed clinical social worker, completed a psychosexual evaluation of Means. Pacult met with Means for four hours. He indicated that Means “was oriented to person, time and place,” and that he “appeared to be of average intelligence, and his thought process and memory appeared intact.” Both the initial arraignment transcript and the transcript of Means’s plea indicate that Means responded appropriately to questions and appeared to be fully cognizant of the proceedings. Finally, neither Means, his counsel nor the district court raised concerns about Means’s mental competence. It was not until the habeas corpus petition that Means raised the issue.
 

 At or before trial, “[t]he test to be applied in determining competency ‘must be whether [the defendant] has sufficient present
 
 *1017
 
 ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.’ ”
 
 [40]
 
 The record supports the conclusion that Means understood the proceedings and was able to rationally consult with his counsel. Therefore, the district court did not err by denying an evidentiary hearing on this allegation as the allegation is belied by the record.
 

 Means next contends that he was never informed that a sentence of lifetime supervision would follow his prison term and that, without a full awareness of the sentence, his guilty plea was unintelligent and involuntary. Means asserts that the district court erred in refusing him an evidentiary hearing on this issue.
 

 For a guilty plea to be valid, the defendant must voluntarily enter the plea under circumstances that are fundamentally fair.
 
 [41]
 
 If the defendant is unaware of the direct consequences of the plea, the defendant cannot knowingly and voluntarily enter a plea of guilty.
 
 [42]
 
 In
 
 Palmer v. State,
 
 we held that lifetime supervision imposed pursuant to NRS 176.0931 “is a direct consequence of a guilty plea,” and therefore, a defendant pleading guilty must be aware of it to enter a knowing and voluntary plea.
 
 [43]
 

 Here, when Means entered his guilty plea, the district court, in its canvass, failed to inform Means that his conviction required that he be subject to lifetime supervision upon release from prison. However, that failure may not constitute reversible error “if the totality of the circumstances revealed by the record otherwise demonstrate that the defendant was aware of the consequence prior to entry of the plea, and was so informed either by the written plea agreement, by counsel, or in some other manner.”
 
 [44]
 

 The record indicates that the lifetime supervision term was specifically set out in the written guilty plea memorandum. However, the record also indicates that although Means pleaded guilty on May 15, 2001, he did not sign the plea memorandum until August 20, 2001, at his sentencing hearing. Hence, the record does not belie Means’s allegation that he was unaware of the lifetime supervision requirement at the time that he entered his guilty
 
 *1018
 
 plea. The record reveals that, during his plea canvass, Means was not questioned as to whether he understood that he would be subject to lifetime supervision. The fact that the record also contains a plea agreement signed more than three months after Means pleaded guilty reveals nothing because the correct inquiry concerns what Means knew at the time he entered his plea. Therefore, the district court erred by denying Means an evidentiary hearing on this claim.
 
 [45]
 
 Upon remand, Means is entitled to pursue the claim that his conviction was obtained in violation of the United States Constitution and the Nevada Constitution
 
 [46]
 
 because his guilty plea was unknowing, involuntary and unintelligent and entered without knowledge of all the direct consequences.
 
 [47]
 
 To sustain his claim, Means must, consistent with our earlier comments, establish by a preponderance of the evidence the fact that he entered his guilty plea without knowledge that he would be subject to lifetime supervision upon his release from prison.
 

 Petitioner’s motion for a default judgment
 

 Finally, Means claims that the district court erred by refusing to enter a default judgment in his favor after the State failed to timely respond to his habeas corpus petition. The record reveals that Means petitioned the district court for a writ of habeas corpus on April 5, 2002. On April 11, 2002, the district court ordered the State to respond to the petition within forty-five days of the date of its order. On or about June 26, 2002, the district court, receiving no response from the State, set the matter for a hearing.
 

 On August 12, 2002, Means moved for a default judgment based upon the State’s unresponsiveness. The State did not file a response to Means’s petition until September 25, 2002, over five months after it was ordered to respond to Means’s petition and four months after the deadline to respond that was imposed by the district court. On September 27, 2002, the State opposed Means’s motion for default judgment. On October 9, 2002, the district court denied Means’s motion for default judgment.
 

 
 *1019
 
 Means claims error in the district court’s denial of his motion for default judgment, arguing that since a convicted person’s failure to meet statutory timelines is a proper ground for summary dismissal of a petitioner’s habeas corpus writ petition, so shodld the State be equally bound by procedural rules or face the identical sanction.
 

 The statutory provisions governing post-conviction habeas procedures are silent with respect to consequences in the event the State fails to abide by procedural rules.
 
 [48]
 
 These same provisions do specifically address, in contrast, the consequences if a habeas petitioner fails to comply. NRS 34.800 and NRS 34.810 allow the district court to dismiss a petition if the habeas petitioner fails to comply with procedural rules. NRS 34.780 incorporates the Nevada Rules of Civil Procedure in post-conviction habeas proceedings to the extent that those rules do not conflict with NRS 34.360 to 34.830.
 

 We conclude that the default provisions of NRCP 55 are inapplicable to post-conviction habeas proceedings. In
 
 Beets v. State,
 

 [49]
 

 we addressed the propriety of a district court entertaining and denying a petitioner’s motion for partial summary judgment in the context of a post-conviction habeas proceeding. We determined that the statutes governing post-conviction habeas proceedings do not provide for summary judgment as a method for determining the merits of issues raised in these types of proceedings.
 
 [50]
 
 If the rules of civil procedure governing summary judgment are inappropriate for post-conviction cases, then permitting entry of default pursuant to NRCP 55 is even more inappropriate. In
 
 Beets,
 
 we noted that habeas corpus proceedings are unique — neither civil nor criminal for all purposes. Because of the unique nature of post-conviction habeas corpus proceedings, we recognized in
 
 Beets
 
 and reaffirm here that reference to the rules of civil procedure is only appropriate when the statutes governing post-conviction practice do not address the issue presented.
 
 [51]
 

 While it is true that the question of sanctions in the event of the State’s failure to respond is not addressed in the post-conviction statutes, it is equally true that the statutes specifically address the only ways in which these cases can be resolved. The post-conviction statutes limit the availability of relief by the grounds
 
 *1020
 
 upon which relief can be based,
 
 [52]
 
 and the time period within which the petition must be brought.
 
 [53]
 
 If a petitioner sets forth adequate legal and factual grounds and if the petition is timely, then the petition may only be resolved through an evidentiary hearing. NRS 34.770(1) specifically states that a petitioner “must not be discharged or committed to the custody of a person other than the respondent unless an evidentiary hearing is held.” This is entirely inconsistent with disposition of the petition through entry of a default judgment. The district court in this case was within the proper exercise of its discretion when it considered the State’s very untimely answer.
 

 We note, in passing, that the unavailability of default judgment as a sanction against the State for its disregard of court imposed deadlines does not mean the district court is powerless to sanction the State for dilatory conduct. The district court, in its sound discretion, may consider sanctions, including but not limited to the imposition of an attorney fee or other monetary sanctions, or in the most egregious cases, an order of confinement of the person at fault.
 

 CONCLUSION
 

 For the foregoing reasons, we reverse the district court’s denial of the relief prayed for in Means’s habeas corpus petition and remand for an evidentiary hearing to determine whether Means was deprived of his right to appeal due to ineffective assistance of counsel, and also to determine if Means’s guilty plea was entered with knowledge that upon release from prison he would be subjected to lifetime supervision, all by a preponderance of the evidence. Further, this matter is remanded to allow Means the opportunity to inspect the notes reviewed by Bryner in aid of his testimony at the first post-conviction hearing.
 

 Becker and Gibbons, JJ., concur.
 

 [1]
 

 Petrocelli v. State,
 
 101 Nev. 46, 692 P.2d 503 (1985),
 
 modified in part on other grounds by Sonner v. State,
 
 112 Nev. 1328, 1333-34, 930 P.2d 707, 711-12 (1996)
 
 and superseded by statute on other grounds as stated in Thomas v. State,
 
 120 Nev. 37, 45, 83 P.3d 818, 823 (2004).
 

 [2]
 

 NRS 176.015(3)(a), (b).
 

 [3]
 

 In violation of NRS 50.125(2), the parties did not submit the file to this court under seal, so we are unable to determine what counsel gave to Means.
 

 [4]
 

 Lisle
 
 v.
 
 State,
 
 113 Nev. 679, 695, 941 P.2d 459, 470 (1997),
 
 limited on other grounds by Middleton
 
 v.
 
 State,
 
 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).
 

 [5]
 

 Tabish v. State,
 
 119 Nev. 293 , 308 n.33, 72 P.3d 584, 594 n.33 (2003).
 

 [6]
 

 Collman v. State,
 
 116 Nev. 687, 702, 7 P.3d 426, 436 (2000).
 

 [7]
 

 NRS 50.125(1)(c)-(d).
 

 [8]
 

 NRS 50.125(1)(b).
 

 [9]
 

 FRCP 26(b)(3) provides that material prepared in anticipation of litigation is discoverable “only upon a showing that the party seeking discovery has sub
 
 *1009
 
 stantial need of the materials in the preparation of the party’s case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.”
 

 [10]
 

 Se,
 
 e.g., FTC v. Grolier Inc.,
 
 462 U.S. 19, 30 (1983) (Brennan, J., concurring);
 
 United States v. Nobles,
 
 422 U.S. 225, 237 (1975) (relying on
 
 Hickman
 
 v.
 
 Taylor,
 
 329 U.S. 495, 511 (1947));
 
 Westinghouse v. Republic of the Philippines,
 
 951 F.2d 1414, 1429 (3d Cir. 1991);
 
 In re Doe, 662
 
 F.2d 1073, 1078 (4th Cir. 1981).
 

 [11]
 

 Upjohn Co.
 
 v.
 
 United States,
 
 449 U.S. 383, 400 (1981) (stating that “Rule 26 accords special protection to work product revealing the attorney’s mental processes”);
 
 In re Grand Jury Proceedings,
 
 33 F.3d 342, 348 (4th Cir. 1994) (stating that “[o]pinion work product is even more scrupulously protected [than fact work product] as it represents the actual thoughts and impressions of the attorney”);
 
 Duplan Corp.
 
 v.
 
 Moulinage et Retorderie de Chavanoz,
 
 509 F.2d 730, 734 (4th Cir. 1974) (stating that “[i]n our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney’s mental impressions, conclusions, opinions or legal theories”);
 
 see also In re Special September 1978 Grand Jury,
 
 640 F.2d 49, 63 (7th Cir. 1980) (concluding that, in the case of client fraud, factual information furnished to the attorney by the client was discoverable, whereas the attorney’s mental impressions, conclusions and legal tactics were not).
 

 [12]
 

 683 F.2d 881, 881-82 (5th Cir. 1982).
 

 [13]
 

 Id.
 
 at 885.
 

 [14]
 

 Id.
 

 [15]
 

 Id.
 
 Spivey’s attorney had offered to take Spivey’s former counsel’s file after counsel’s mental impressions or legal theories had been excised. However, when the attorney’s mental impressions are at issue, at least one federal court has allowed discovery of attorney files containing the attorney’s mental impressions, opinions, legal theories and conclusions. In
 
 Holmgren
 
 v.
 
 State Farm Mutual Automobile Insurance Co.,
 
 976 F.2d 573 , 577 (9th Cir. 1992), the Ninth Circuit Court of Appeals held that FRCP 26(b)(3) permitted discovery of attorney work product in a bad-faith suit against an insurance company, where the insurance company’s adjusters prepared estimates valuing the insured’s claim, the insurance company’s intent was the pivotal issue and the party seeking the valuation demonstrated a compelling need for the material because the information was not otherwise available.
 
 See also Donovan v. Fitzsimmons,
 
 90 F.R.D. 583, 588 (N.D. Ill. 1981) (concluding that, where the attorney’s communications to the client were at issue, the work product doctrine did not protect the attorney’s file from discovery).
 

 [16]
 

 See, e.g., Kirksey
 
 v.
 
 State,
 
 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996).
 

 [17]
 

 466 U.S. 668, 687 (1984).
 

 [18]
 

 Warden
 
 v.
 
 Lyons,
 
 100 Nev. 430, 432, 683 P.2d 504, 505 (1984).
 

 [19]
 

 466 U.S. at 689.
 

 [20]
 

 Id.
 
 (quoting
 
 Michel
 
 v.
 
 Louisiana,
 
 350 U.S. 91, 101 (1955)).
 

 [21]
 

 Id.
 
 at 687.
 

 [22]
 

 Id.
 
 at 694.
 

 [23]
 

 Id.
 
 at 697.
 

 [24]
 

 See generally id.
 

 [25]
 

 107 Nev. 600, 602, 817 P.2d 1169, 1170 (1991) (quoting
 
 Lenz v. State,
 
 97 Nev. 65, 66, 624 P.2d 15, 16 (1981));
 
 see also Warden v. Lischko,
 
 90 Nev. 221, 223, 523 P.2d 6, 7 (1974),
 
 overruled in part on other grounds by Pellegrini
 
 v.
 
 State,
 
 117 Nev. 860, 886, 34 P.3d 519, 536 (2001).
 

 [26]
 

 See, e.g., Triana
 
 v.
 
 U.S.,
 
 205 F.3d 36, 40 (2d Cir. 2000);
 
 McKenzie
 
 v.
 
 McCormick,
 
 27 F.3d 1415, 1418-19 (9th Cir. 1994) (citing
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 469 (1938) for the proposition that a petitioner must convince the district court of the facts underlying an alleged constitutional error by a preponderance of the evidence). Notably, when the Fifth Circuit Court of Appeals considered
 
 Washington
 
 v.
 
 Strickland,
 
 the court relied on earlier circuit cases in stating that the petitioner asserting ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. 693 F.2d 1243, 1250 (5th Cir. 1982) (citing
 
 United States
 
 v.
 
 Killian,
 
 639 F.2d 206, 210 (5th Cir. 1981);
 
 Mays v. Balkcom,
 
 631 F.2d 48, 52 n.1 (5th Cir. 1980);
 
 Marino v. United States,
 
 600 F.2d 462, 464 (5th Cir. 1979)). While the United States Supreme Court reversed, it did not address whether preponderance was the correct burden of proof.
 

 [27]
 

 334 F.3d 862, 869 (9th Cir. 2003).
 

 [28]
 

 56 F.3d 662, 667 (5th Cir. 1995).
 

 [29]
 

 In
 
 Hogan
 
 v.
 
 Warden,
 
 109 Nev. 952, 960, 860 P.2d 710, 716 (1993) (quoting
 
 Sawyer
 
 v.
 
 Whitley,
 
 505 U.S. 333, 336 (1992)), we held that a post-conviction habeas petitioner who was attempting to overcome a procedural default by demonstrating he was ineligible for the death penalty due to “actual innocence” was required to prove by “ ‘clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner
 
 *1013
 
 eligible for the death penalty under the applicable state law.’ ’ ’ Our holding today is limited to a petitioner’s burden of proof of facts underlying claims of ineffective assistance of counsel that are raised in a post-conviction habeas petition that are not otherwise procedurally barred. This court’s prior holding in
 
 Hogan
 
 remains unaffected and intact.
 

 [30]
 

 On August 20, 2001, the district court sentenced Means to 240 months with a minimum parole eligibility of 133 months. On January 10, 2002, the district court issued an amended judgment of conviction correcting the parole eligibility to 96 months.
 

 [31]
 

 See Collman v. State,
 
 116 Nev. 687, 724, 7 P.3d 426, 450 (2000).
 

 [32]
 

 115 Nev. 17, 20, 974 P.2d 658, 660 (1999).
 

 [33]
 

 Id.
 

 [34]
 

 Id.
 
 (quoting
 
 Lozada v. State,
 
 110 Nev. 349, 354, 871 P.2d 944, 947 (1994)).
 

 [35]
 

 See Thomas
 
 v.
 
 State,
 
 115 Nev. 148, 150, 979 P.2d 222, 223 (1999) (recognizing that under certain circumstances counsel will have an obligation to advise a defendant who pleaded guilty of the right to appeal, including where the defendant inquires about an appeal or where the defendant may benefit from receiving advice regarding an appeal).
 

 [36]
 

 Marshall v. State,
 
 110 Nev. 1328, 1331, 885 P.2d 603, 605 (1994).
 

 [37]
 

 U.S. Const. amend. XIV.
 

 [38]
 

 Thomas,
 
 120 Nev. at 44, 83 P.3d at 823.
 

 [39]
 

 Id.
 

 [40]
 

 Melchor-Gloria
 
 v.
 
 State,
 
 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983) (second alteration in original) (quoting
 
 Dusky
 
 v.
 
 United States,
 
 362 U.S. 402, 402 (1960)).
 

 [41]
 

 Bryant
 
 v.
 
 State,
 
 102 Nev. 268, 273 , 721 P.2d 364, 368-69 (1986).
 

 [42]
 

 Palmer v. State,
 
 118 Nev. 823, 825, 59 P.3d 1192, 1193 (2002).
 

 [43]
 

 Id.
 
 at 825, 829-31, 59 P.3d at 1193, 1196-97.
 

 [44]
 

 Id. at 831, 59 P.3d at 1197.
 

 [45]
 

 Means also argues that the district court erred by denying him an eviden-tiary hearing on defense counsel’s alleged failure to investigate and failure to set aside the plea. The alleged failure to investigate is belied by the record. Although Means now claims his innocence, he admitted his guilt not only in the district court but also to all of the psychological evaluators. Furthermore, Means does not demonstrate, if indeed his counsel failed to investigate his case, how such failure prejudiced the defense. Therefore, this argument lacks merit. Finally, regarding Means’s argument that counsel was ineffective for failing to move to withdraw Means’s guilty plea before sentencing, the record does not reveal that Means demonstrated a desire to withdraw his plea before sentencing. Therefore, this argument must fail as well.
 

 [46]
 

 NRS 34.724(1).
 

 [47]
 

 Mabry v. Johnson,
 
 467 U.S. 504, 508-09 (1984).
 

 [48]
 

 See
 
 NRS 34.720 to 34.830.
 

 [49]
 

 110 Nev. 339, 341, 871 P.2d 357, 358 (1994).
 

 [50]
 

 Id.
 

 [51]
 

 Id.; see also Mazzan
 
 v.
 
 State,
 
 109 Nev. 1067, 1070, 863 P.2d 1035, 1036 (1993).
 

 [52]
 

 NRS 34.724.
 

 [53]
 

 NRS 34.726.