130 Nev., Advance Opinion 13

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LAS VEGAS SANDS CORP., A NEVADA CORPORATION; AND SANDS CHINA LTD., A CAYMAN ISLANDS CORPORATION,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE ELIZABETH GOFF GONZALEZ, DISTRICT JUDGE,
Respondents,
  and
STEVEN C. JACOBS,
Real Party in Interest.

No. 62489

**FILED**

FEB 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order compelling disclosure of purportedly privileged documents.

*Petition granted.*

Morris Law Group and Steve L. Morris and Rosa Solis-Rainey, Las Vegas; Kemp, Jones & Coulthard, LLP, and J. Randall Jones and Mark M. Jones, Las Vegas; Holland & Hart LLP and J. Stephen Peek and Robert J. Cassity, Las Vegas,
for Petitioners.

Pisanelli Bice, PLLC, and Todd L. Bice, James J. Pisanelli, and Debra L. Spinelli, Las Vegas,
for Real Party in Interest.

7/17/14: Corrected per letter to publishers. CJ

14-06404

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, GIBBONS, C.J.:

In this opinion, we consider whether a witness's review of purportedly privileged documents prior to testifying constitutes a waiver of any privilege under NRS 50.125, such that the adverse party may demand production, be allowed to inspect the documents, cross-examine the witness on the contents, and admit the evidence for purposes of impeachment. We conclude that it does. However, under the specific facts of this case, where the adverse party failed to demand production, inspection, cross-examination, and admission of the documents at or near the hearing in question and instead waited until well after the district court had entered its order, the demand was untimely under NRS 50.125(1). Accordingly, we grant petitioners' request for a writ of prohibition to halt the production of the purportedly privileged documents.

*FACTS AND PROCEDURAL HISTORY*

Real party in interest Steven Jacobs filed an action against petitioners Las Vegas Sands Corp. and Sands China Ltd. and nonparty Sheldon Adelson, the chief executive officer of Las Vegas Sands (collectively, Sands), arising out of Jacobs's termination as president and chief executive officer of Sands's Macau operations. Jacobs alleged that Sands breached his employment contract by refusing to award him promised stock options, among other things. When the district court

---

[1]The Honorable Kristina Pickering and the Honorable Ron Parraguirre, Justices, voluntarily recused themselves from participation in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

denied Sands China's motion to dismiss for lack of personal jurisdiction, Sands filed a petition for a writ of mandamus with this court, challenging the district court's finding of personal jurisdiction. We granted the petition for a writ of mandamus due to defects in the district court's order and directed the district court to revisit the issue of personal jurisdiction, hold an evidentiary hearing, and issue its findings on personal jurisdiction. *See Sands China Ltd. v. Eighth Judicial Dist. Court*, Docket No. 58294 (Order Granting Petition for Writ of Mandamus, August 26, 2011).

As a result of Sands's conduct in the ensuing jurisdictional discovery process, the district court sua sponte ordered an evidentiary hearing to consider sanctions. At the hearing, the district court considered (1) whether Sands violated EDCR 7.60(b) by causing the district court and Jacobs to waste time and resources on the applicability of Macau's Personal Data Protection Act (MPDPA), and (2) whether Sands breached its duty of candor to the court.[2]

During the three-day sanctions hearing, Jacobs cross-examined former Las Vegas Sands attorney Justin Jones on the theory that Jones and another attorney had printed copies of e-mails from Jacobs

---

[2]The MPDPA prohibits the transfer of personal data out of Macau, but testimony revealed that Sands had transported "ghost images" of important hard drives from Macau into the United States and that other data links were available between Macau and Las Vegas. Despite the fact that the information was already in the United States, Sands delayed discovery by asserting that it was having trouble obtaining authorization from Macau to transfer the data out of the country; it was forced to fly to Macau to view the data; and as a result, it could not comply with its disclosure obligations. When the district court found out that the information had been in the United States all along, it ordered a sanctions hearing.

but did not retain the copies so that they could later claim they technically did not possess the documents, as the documents would have been in the United States in violation of Macau law. Jacobs noted that Jones's testimony had been fairly precise, and asked if Jones had reviewed his billing records before arriving at court that day. Following a work product objection, Jones responded affirmatively, explaining that he had done so to refresh his recollection as to certain dates, and that reviewing those records had in fact refreshed his recollection as to relevant dates. After another work product objection, Jones revealed that he had also reviewed e-mails that refreshed his memory as to the timing of events.

Jacobs argued at the hearing that Nevada law requires a party to disclose any documents used to refresh a witness's recollection, and thus, the billing records and e-mails Jones used were openly discoverable. When Sands objected to the identification and examination of the e-mails based on the work product doctrine and the attorney-client privilege, the district court suggested that Jacobs file a motion requesting that the documents be produced. The district court indicated that it would hold argument and rule on the discovery issue at a later date. Two days later, and without deciding the discovery issue, the district court filed its order imposing sanctions on Sands.

Jacobs filed his motion to compel production of the documents Jones used to refresh his recollection two months later. In this motion, Jacobs alleged that Jones had waived the work product doctrine and the attorney-client privilege when he refreshed his recollection with the purportedly privileged documents. Sands opposed the motion, arguing that NRS 50.125(1), which generally requires disclosure of a writing used to refresh a witness's memory, does not require automatic disclosure of privileged documents, and that the district court must employ a balancing

test to determine whether disclosure is in the interests of justice. Alternatively, Sands argued that the rights of production, inspection, cross-examination, and admission provided for in NRS 50.125(1) must be exercised at the hearing at which the witness testifies based on the documents. The district court heard arguments in chambers and entered an order compelling Sands to produce the documents. At Sands's request, the district court stayed enforcement of its order pending the resolution of these writ proceedings.

## DISCUSSION

When the district court acts without or in excess of its jurisdiction, a writ of prohibition may issue to curb the extrajurisdictional act. *Club Vista Fin. Servs., L.L.C. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 276 P.3d 246, 249 (2012). Thus, even though discovery matters typically are addressed to the district court's sound discretion and unreviewable by writ petition, this court has intervened in discovery matters when (1) the trial court issues blanket discovery orders without regard to relevance, or (2) a discovery order requires disclosure of privileged information. *Id.* at ___ & n.6, 276 P.3d at 249 & n.6 (explaining that discovery excesses are more appropriately remedied by writ of prohibition than mandamus); *Valley Health Sys., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 252 P.3d 676, 679 (2011); *Schlatter v. Eighth Judicial Dist. Court*, 93 Nev. 189, 193, 561 P.2d 1342, 1344 (1977). This case presents a situation where, if improperly disclosed, "the assertedly privileged information would irretrievably lose its confidential and privileged quality and petitioners would have no effective remedy, even by later appeal." *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350-51, 891 P.2d 1180, 1183-84 (1995). Thus, we choose to exercise our discretion to consider this writ petition because the district court order

at issue compels disclosure of purportedly privileged information. *See Valley Health*, 127 Nev. at ___, 252 P.3d at 679; *see also Aspen Fin. Servs., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 289 P.3d 201, 204 (2012) ("[W]rit relief may be available when it is necessary to prevent discovery that would cause privileged information to irretrievably lose its confidential nature and thereby render a later appeal ineffective.").

*Standard of review*

Here, the parties dispute the district court's interpretation and application of NRS 50.125. Statutory interpretation and application is a question of law subject to our de novo review, even when arising in a writ proceeding. *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008). "Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language." *Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007). But when a statute is susceptible to more than one reasonable interpretation, it is ambiguous, and this court must resolve that ambiguity by looking to legislative history and "construing the statute in a manner that conforms to reason and public policy." *Great Basin Water Network v. Taylor*, 126 Nev. ___, ___, 234 P.3d 912, 918 (2010).

*When invoked at a hearing, NRS 50.125 requires disclosure of any document used to refresh the witness's recollection before or while testifying, regardless of privilege*

To resolve this appeal, we must determine whether the Nevada Legislature intended all writings, including privileged documents, to be produced for impeachment purposes when a witness uses the document to refresh his or her recollection prior to testifying. NRS 50.125(1) provides for the production and introduction of writings used to refresh a witness's memory:

> If a witness uses a writing to refresh his or her memory, either before or while testifying, an adverse party is entitled:
>
>> (a) To have it produced at the hearing;
>>
>> (b) To inspect it;
>>
>> (c) To cross-examine the witness thereon; and
>>
>> (d) To introduce in evidence those portions which relate to the testimony of the witness for the purpose of affecting the witness's credibility.

The intersection of NRS 50.125 and Nevada privilege law is an issue of first impression in Nevada.[3]

Sands argues that NRS 47.020 and NRCP 26(b)(3) guarantee that the work product doctrine and the attorney-client privilege apply at all stages of all proceedings except where they are "relaxed by a statute or procedural rule applicable to the specific situation." NRS 47.020(1)(a). To that end, Sands argues that NRS 50.125 does not "relax" any privilege because it does not specifically mandate the forfeiture of privileged

---

[3]We note that this court addressed the interaction between NRS 50.125 and privileged communications in *Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004). In *Means*, a former client demanded work product from his former attorney, not the more common scenario where counsel representing an adverse party demands disclosure. *Id.* at 1009-10, 103 P.3d at 30-31. Under the circumstances presented there, we concluded that disclosure of the documents in question was warranted. *Id.* at 1010, 103 P.3d at 31. We take this opportunity to clarify that *Means* involved a unique factual situation where a former client attempted to obtain his former counsel's notes for the purposes of an ineffective assistance of counsel claim. Our narrow holding was consistent with our reliance on *Spivey v. Zant*, 683 F.2d 881 (5th Cir. 1982), a case holding that a former client is entitled to all portions of his former attorney's file and that the work product protection only applies when an adversary seeks materials. *Id.* at 885. Therefore, we conclude that *Means* is inapplicable to the case at hand.

documents when a witness uses those documents to refresh his or her memory before testifying. Alternatively, Sands argues that NRS 50.125 only provides that an adverse party is entitled to a document *at the hearing*, and therefore, it cannot be used as a tool for obtaining discovery after the relevant hearing has concluded. Jacobs responds that NRS 50.125 makes no exception for privileged documents and therefore applies to both privileged and nonprivileged documents. Additionally, Jacobs argues that NRS 50.125 lacks the discretionary prong that its federal counterpart, Federal Rule of Evidence (FRE) 612, contains.[4] Thus, Jacobs asserts that any document used to refresh a witness's recollection before or during testimony must be disclosed.

Looking at the language of NRS 50.125, we conclude that the language "a writing" is ambiguous because the phrase could be interpreted to mean any writing, privileged or unprivileged. "[A] writing" could also be interpreted under NRS 47.020 to exempt privileged documents because under NRS 47.020, a privilege applies "at all stages of all proceedings" except where it is "relaxed by statute or procedural rule applicable to the specific situation." NRS 47.020(1). Therefore, we consider the statute's legislative history.

---

[4]Similar to NRS 50.125, FRE 612(b) provides that when a witness uses a writing to refresh his or her memory, "an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." But FRE 612(a) differentiates between instances when a witness uses a writing to refresh memory while testifying as opposed to before testifying. In situations when a witness uses a writing to refresh his or her memory prior to testifying, it is within the district court's discretion to decide whether justice requires the writing to be produced. FRE 612(a)(2).

Supreme Court
of
Nevada

(O) 1947A

*NRS 50.125 differs significantly from FRE 612*

The Nevada Legislature has not amended NRS 50.125 since its passage in 1971. At that time, the language of the statute was chosen based on a draft version of FRE 612. Hearing on S.B. 12 Before the Senate Judiciary Comm., 56th Leg. (Nev., February 10, 1971). During the United States Congress's consideration of the draft rules, however, it amended FRE 612(a) to make production of writings used by a witness to refresh recollection *before* testifying subject to the discretion of the court "in the interests of justice, as is the case under existing federal law." H.R. Rep. No. 93-650, at 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7086. Congress implemented this change because it did not want to require wholesale production of documents used before testifying, as doing so "could result in fishing expeditions." *Id.* NRS 50.125 does not contain this discretionary prong.

The legislative history of NRS 50.125 does not shed light on whether the Nevada Legislature intended to require automatic disclosure despite a document's privileged status. But the legislators who worked on Nevada's evidence code noted that they wanted the code to promote "the search for truth," that "as much evidence as can come out, should come out," and therefore, they attempted to limit exceptions. Hearing on S.B. 12 Before the Senate Judiciary Comm., 56th Leg. (Nev., February 10, 1971).

Sands argues that the difference in the text between FRE 612 and NRS 50.125 is slight and does not affect the outcome of the case and that Nevada courts should have discretion on a case-by-case basis to balance the adverse party's need for the writing against the important public interests in protecting privileged documents. Jacobs responds that unlike FRE 612, NRS 50.125 draws no distinction between documents

SUPREME COURT
OF
NEVADA

(O) 1947A

9

used prior to and while testifying, and contains no provision for the exercise of discretion. Further, Jacobs argues that even under federal cases that apply the discretionary prong, the weight of authority mandates disclosure of the privileged documents.

We conclude that the differences between NRS 50.125 and FRE 612 are significant. Whereas FRE 612 permits the district court's exercise of discretion to preclude disclosure of privileged documents used to refresh a witness's recollection before testifying, no such discretionary language exists in NRS 50.125. Without such language in NRS 50.125, Nevada district courts lack discretion to halt the disclosure of privileged documents when a witness uses the privileged documents to refresh his or her recollection prior to testifying. In the 40 years since the passage of FRE 612, the Nevada Legislature has had the option to bring NRS 50.125 in line with the federal rule by adding a discretionary prong, but has not. Thus, we conclude that NRS 50.125 mandates that documents relied on before and during testimony to refresh recollection be treated the same. We therefore decline to read a discretionary element into NRS 50.125 where the Legislature has provided none.

Additionally, allowing privilege to prevail at this stage of a witness's testimony would place an unfair disadvantage on the adverse party. Sands's interpretation of NRS 50.125 would encourage witnesses to use privileged writings to refresh recollection in an attempt to shield the witness from any meaningful cross-examination on his or her testimony.[5]

---

[5]We have previously observed that "the attorney-client privilege was intended as a shield, not a sword." *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 354, 891 P.2d 1180, 1186 (1995) (internal quotation marks omitted). It would be unfair to allow a witness to rely on a privileged document to refresh his or her recollection, and then disallow

*continued on next page...*

Such an interpretation of NRS 50.125 would inhibit the cross-examining party from investigating discrepancies between the writing and the witness's testimony, and as such, would serve to inhibit "the search for truth."

The Nevada Legislature enacted NRS 50.125 to allow an adverse party to inspect and use the document to test a witness's credibility at the hearing. Thus, we conclude that where a witness refreshes his or her recollection with privileged documents, the witness takes the risk that an adversary will demand to inspect the documents. Therefore, when invoked at a hearing, we conclude that NRS 50.125 requires disclosure of any document used to refresh the witness's recollection before or while testifying, regardless of privilege. *See* *Wardleigh*, 111 Nev. at 354-55, 891 P.2d at 1186 (indicating that the "attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit" (internal quotations omitted)). However, as explained below, Jacobs did not properly invoke NRS 50.125 at the sanctions hearing, rendering the issue of Jones's credibility a moot point.

We note that Jones's reliance on the purportedly privileged documents for the purposes of refreshing his recollection would have only

---

*...continued*

the cross-examiner to know the extent to which that document influenced or contradicts the witness's testimony. *See James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 146 (D. Del. 1982) ("The instant request constitutes neither a fishing expedition into plaintiff's files nor an invasion of counsel's 'zone of privacy.' Plaintiff's counsel made a decision to educate their witnesses by supplying them with the [privileged documents], and the Raytheon defendants are entitled to know the content of that education.").

required disclosure of the documents to opposing counsel upon appropriate request under NRS 50.125, and would not constitute any further waiver of the work product doctrine or the attorney-client privilege that would have made the documents discoverable at a later point. *See Marshall v. U.S. Postal Serv.*, 88 F.R.D. 348, 351 (D.D.C. 1980) ("[U]se of a document for recollection purposes requires only the disclosure of the document to opposing counsel, and [the] disclosure does not, in and of itself, constitute any further waiver of the attorney-client privilege.").

*The district court abused its discretion when it ordered the production of purportedly privileged documents because the request was untimely and Jones's credibility was no longer at issue*

Sands argues that NRS 50.125 was designed to ensure that an adverse party has a full and fair opportunity to test the witness's credibility when the witness's testimony is based on recollection that was refreshed by examining particular writings. Sands points out that when the district court entered its order compelling production of the documents in question, there was no longer any need or opportunity to test Jones's credibility because the hearing was already over and the district court had issued its sanctions order. Jacobs argues that the fact that the district court made its decision post-hearing does not impair Sands's production requirements.

NRS 50.125(1) plainly states that the adverse party is entitled to have a document used to refresh the witness's recollection produced at the hearing, to allow inspection and cross-examination based on the document, and to permit the adverse party to introduce the document into evidence "for the purpose of affecting the witness's credibility." As the United States Court of Appeals for the Third Circuit has noted, "[FRE] 612 is a rule of evidence, and not a rule of discovery. Its sole purpose is evidentiary in function 'to promote the search of credibility and memory.'"

*Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985) (quoting FRE 612 advisory committee note); *see also Derderian v. Polaroid Corp.*, 121 F.R.D. 13, 17 (D. Mass. 1988) (indicating that FRE 612 "is a rule of *evidence*, not a rule of *discovery*"); *Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 683 (D. Kan. 1986) (same).[6] Although Jacobs argues that Sands's misconduct is ongoing, we are convinced that permitting such an untimely motion would encourage the types of "fishing expeditions" that both the Nevada Legislature and Congress sought to avoid with NRS 50.125 and FRE 612. The sole purpose of NRS 50.125 is to test the witness's credibility *at the hearing*, and the statute clearly states that the production must occur at the hearing.

Here, the district court order compelling production of the purportedly privileged documents effectively turns NRS 50.125 into a discovery tool that has no relation to testing any witness's credibility. The district court read NRS 50.125 too broadly when it ordered the production of the billing entries and e-mails two months after Jones left the stand and after it issued its sanctions order. This is evident in the district court order's language, which states that "[p]ursuant to NRS 50.125, once a document is used by a witness to refresh his recollection, then that document is subject to discovery." This reading of NRS 50.125 ignores the "at the hearing" language and turns the statute into a general rule of discovery, not a rule of evidence. *See Derderian*, 121 F.R.D. at 17. As a result, we conclude that the district court abused its discretion by

---

[6]We note that despite the differences between FRE 612 and NRS 50.125, the two provisions serve the same fundamental purpose. Thus, we find this authority persuasive inasmuch as it relates to the proper purpose of NRS 50.125.

mandating the production of the purportedly privileged documents after it had issued its sanctions order. *See Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006) (explaining that a district court abuses its discretion if its decision "exceeds the bounds of law or reason").

Under these facts, when the district court indicated that it wanted briefing and would defer ruling on the issue, Jacobs should have noted that NRS 50.125 required the district court to rule on his request at the hearing. Alternatively, Jacobs should have submitted his motion immediately following the hearing to ensure that Jones could be put back on the stand and cross-examined regarding the contents of the purportedly privileged documents before the district court issued its ruling.

However, because the district court already issued its ruling on the sanctions issue, the issue of Jones's credibility became a moot point and there was no evidentiary reason to produce the documents. Thus, this is precisely the scenario in which "writ relief . . . is necessary to prevent discovery that would cause privileged information to irretrievably lose its confidential nature and thereby render a later appeal ineffective." *Aspen Fin. Servs., Inc.*, 128 Nev. at ___, 289 P.3d at 204.

## CONCLUSION

We conclude that upon a timely request, NRS 50.125 mandates production of documents used by a witness to refresh his or her recollection prior to testifying, regardless of privilege. However, considering these facts, Jacobs's request for production of the documents was not timely because the district court had already issued its ruling on the underlying sanctions issue. We therefore grant Sands's petition and direct the clerk of this court to issue a writ of prohibition ordering the

district court to halt the production of the purportedly privileged documents.[7]

_____, C.J.
Gibbons

We concur:

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[7]In light of this disposition, we need not address the parties' other arguments, and Sands's alternative request for a writ of mandamus is denied.